UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE JUDGE ROTENBERG EDUCATIONAL
CENTER INC.,

                      Plaintiff(s),

-- against –

**GREGORY J. BLASS**, Commissioner, Suffolk County
Department of Social Services in his Official Capacity,
SUFFOLK COUNTY

                      Defendant(s).

Index #: CV-10 3628

**SECOND AMENDED**
**VERIFIED COMPLAINT**

(ADS) J (ARL) MJ

**JURY DEMAND**

## I.  INTRODUCTION

1.     This is a lawsuit, for breach of contract and unjust enrichment, brought by the Judge Rotenberg Educational Center, Inc., to recover payment from the Suffolk County Department of Social Services and/or Suffolk County, for services that were provided to Racheal P, (hereinafter **RP**) a developmentally disabled and emotionally disturbed young adult placed at the Judge Rotenberg Educational Center by the Commissioner of the Suffolk County Department of Social Services and who remained there until her discharge to a community residence in Suffolk County, New York on December 15, 2009.  The outstanding balance at issue is for services that were rendered to **RP** from December 5, 2008 to December 15, 2009.

1

## II.  PARTIES

2. The Judge Rotenberg Educational Center Inc., (hereinafter **JRC**) is located in Canton, Massachusetts and is a Massachusetts nonprofit Corporation operating a residential treatment program and educational facility for children and adults with severe behavior problems coupled with developmental disabilities.

3. Gregory J. Blass is the Commissioner of the Suffolk County Department of Social Services (hereinafter **SCDSS**) and is the person responsible for administering the Medicaid, child and adult protective services programs, and welfare related programs in Suffolk County.  The Commissioner is also charged with the care and custody of children under Article 10 of the Family Court Act when so ordered, as was the case with **RP**.  Suffolk County, ( **COUNTY**) was and still is a municipality organized by virtue of laws of the State of New York and located in Suffolk County.

## III.  JURISDICTION

4. The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff is a residential treatment and educational facility with a principal place of business in Canton, Massachusetts, and Defendants are citizens of New York State and the amount in controversy exceeds $75.000, excluding interest and costs.

## IV.  FACTUAL BACKGROUND

A. **Suffolk County Family Court Orders RP  Placed at JRC**

5. **RP** is a developmentally and emotionally disabled  resident of Suffolk County,

New York, who was removed from her mother's care on or about June 25, 1996 at the age of nine based on parental neglect.

6. From the time she was removed from her home, through April 11, 2007, **RP** resided in a series of foster homes, group residences for emotionally disturbed and developmentally disabled children, residential schools and a number of hospitalizations following episodes of self injurious behaviors.

7. By Court Order dated March 26, 2007, Suffolk County Family Court Judge Martha Luft placed **RP** in the care and custody of the Commissioner of the Suffolk County Department of Social Services (**SCDSS**) to include the period of transition from child to adult services and placement, as such, the special relationship that existed between **RP** and **SCDSS** continued.

8. In accordance with the March 26, 2007-Order, **SCDSS** placed **RP,** who was twenty years of age at the time, at **JRC**, On April 11, 2007, pursuant to a contractual agreement between **SCDSS** and **JRC** whereby **JRC** was to provide **RP** with care and treatment and in return, **SCDSS** agreed to pay **JRC** for its services.

9. The Commissioner of **SCDSS**, in whose care and custody **RP** was placed since 1996, did not commence a Mental Hygiene Law Article 81 proceeding to appoint a legal guardian in anticipation of **RP** attaining the age of twenty-one.

10. On information and belief, **SCDSS** knew or should have known that **RP** had no community ties in Suffolk County and no capable adults to advocate on her behalf and to screen New York placements for suitability.

11. The Individuals with Disabilities Education Act, 20 U.S.C. § 1471, et a seq., provides that all children with disabilities receive a free and appropriate education through the age

3

of twenty-one.

12.     Upon attaining the age of twenty-one, students "age out" of their educational programs usually paid for by the local school districts and the funding responsibilities shift to the respective instate agency that will provide them with adult placements and community services.

13.     New York Social Services Law § 398 13 (a) (I)(ii) requires, the social service official to identify the anticipated needs of each returning student and to prepare a report based upon its assessment for planning purposes.

14.     The Commissioner of **SCDSS** was required to prepare a Transmittal for **RP** in compliance with Social Services Law § 398 in anticipation of **RP** attaining the age of twenty-one.

15.     When a Transmittal is prepared for evaluation of the returning student's anticipated needs for adult services and residential placements of a student under the care and custody of the Commissioner, he is required to determine which Commissioners of other state agencies will receive the Transmittal and other information or reports by first considering each of that student's disabilities.

16.     The Commissioner of **SCDSS** was required to review **RP**'s complete history, including all of her psychological and medical records maintained throughout the years by **SCDSS** and to forward them for evaluation for adult services to the Commissioner of the Office of Mental Retardation and Developmental Disabilities (**OMRDD**) and if necessary, to the Commissioner of the New York State Office of Mental Health (**OMH**).

17.     Social Services Law § 398 13 ( c ) also requires the Commissioner of **SCDSS** to forward reports to the Council on Children and Families, for assistance in identifying, planning

and coordinating the appropriate instate programs in anticipation of the returning student attaining the age of twenty-one.

18.  In circumstances where there exists a conflict between the government agencies, *or* where a transitioning student is hard to place, as was the case with **RP**, **SCDSS** was supposed to have referred the matter to the New York State Council on Children and Families for resolution.

19.  On or about December 7, 2007, **JRC**, along with **SCDSS** as **RP**'s guardian, submitted a Transmittal, pursuant to Social Services Law § 398 to begin evaluation for transition from child to adult services to the Long Island Developmental Disabilities Services Office (**LIDDSO**), the regional **OMRDD** office.

20.  On or about five (5) months later on May 19, 2008, **SCDSS** was notified that the first of a three-step review by the **LIDDSO** determined that **RP** did not have a "qualifying disability."

21.  On or about June 25, 2008, a last step review was conducted by **LIDDSO** to reconsider **RP**'s eligibility to receive adult services under programs administered by **OMRDD**.

22.  By notice dated June 30, 2008, on the day **RP** was to have "aged out," **SCDSS** and **JRC** were notified by **LIDDSO** that the clinical evaluations did not provide evidence of a qualifying diagnosis that met with **OMRDD**'s statutory criteria.

23.  A request for an administrative fair hearing was submitted to challenge, inter alia, the determination to deny **RP** services as an adult in need of transition from the care and custody of the Commissioner of **SCDSS** to that of **OMRDD.**

24.     **OMRDD** agreed to pay **JRC** for the services it was providing **RP** pending the outcome of the appeal.

25.     Rather than wait for the administrative law judge's decision, a Transmittal was sent on or about September 9, 2008 to the New York State Office of Mental Health (**OMH**) indicating that **RP** was in need of adult services and a residential placement.

26.     **JRC** was advised by **OMH** that no housing was available for **RP** and that **JRC** would be notified of future openings.

27.     On information and belief, **SCDSS** again did not request assistance from the Council on Children and Families.

28.     An administrative hearing was held on October 21, 2008 *at the SCDSS offices in* Hauppauge, New York to reconsider **OMRDD**'s denial of **RP**'s eligibility to receive services.

29.     No one from **SCDSS** appeared on **RP**'s behalf.

30.     **RP**'s clinician and case manager from **JRC** testified that **RP** met all of **OMRDD**'s eligibility requirements.

31.     On or about December 5, 2008, the New York State Department of Health's Commissioner Designee rendered his decision denying **RP** Medicaid eligibility to receive adult residential placement and treatment services through **OMRDD**.

32.     On or about January 12, 2009, **OMRDD** notified **JRC** that it would not take responsibility for **RP**'s care.

33.     In anticipation of **RP** attaining the age of twenty-one, **SCDSS**, had not petitioned

6

the court to appoint a guardian given **RP**'s disabilities and lack of family or community support.

34. On or about January 12, 2009, **JRC** staff contacted **SCDSS** and conveyed **OMRDD**'s decision that it would not provide services for **RP.** The **SCDSS** caseworker instructed **JRC** staff to bring **RP** to the **SCDSS** office located in Hauppauge, New York.

**B**.  **SCDSS Instructs JRC Staff to Take RP to a Homeless Shelter**

35. On January 14, 2009, following the instructions of the **SCDSS** worker, two **JRC** staff members accompanied **RP** to the **SCDSS** office in Hauppauge, New York.

36. Upon arrival, a **SCDSS** worker directed the **JRC** staff to take **RP** to a homeless shelter, advising them that it was the Agency's standard procedure because **RP** was past the age of twenty-one, and no longer **SCDSS**'s responsibility.

37. The **JRC** staff that accompanied **RP** was familiar with **RP**'s history of aggression, severe cognitive deficits and inappropriate behaviors, that in large part, upon information and belief are due to her inability to process her emotions and to weigh risks before acting on her impulses. Given the circumstances, the **JRC** staff felt that it would be unconscionable to leave **RP** in a homeless shelter without a plan, without housing, and without adequate supervision and returned her to **JRC** until **SCDSS** located more suitable housing.

38. On or about January 19, 2009, **JRC** staff contacted the office of the Commissioner of **SCDSS**  to discuss the incident that had occurred when **RP** was brought to their offices,  and to ask what  **JRC** was to do with **RP**. On information and belief, no one in the Commissioner's office was willing to take responsibility for her or make any effort to provide **RP** with any further assistance.

### C. **JRC Files a MHL Article 81 Petition in Suffolk County Supreme Court's Model Guardianship Part**

39. The Suffolk County Model Guardianship Part is one of several statewide pilot programs that involves a multi-tiered approach to addressing the needs of litigants with special needs and among other functions, confers jurisdiction on the Court to accept all litigation involving the Incapacitated Person, including *but not* limited to, matrimonial, foreclosures, landlord-tenant matters and criminal proceedings.

40. The Court Examiner Specialist of the Model Guardianship Part was notified that **RP**, a developmentally disabled Suffolk County resident in need of supervision and without family or community ties had been essentially been abandoned at **JRC**.

41. On March 16, 2009, Matthew Israel, PhD. , Director of **JRC** filed a Petition in Suffolk County Supreme Court, noticing all parties, including **SCDSS**, that he was seeking the appointment of a special guardian to appeal **OMRDD**'s denial of eligibility, and of a permanent guardian to ensure that **RP** receives appropriate services with the level of supervision that she requires.

42. On the same day the Petition was filed, the Judge of the Model Guardianship Part signed an Order to Show Cause appointing an attorney to act as **RP**'s Special Temporary Guardian, for the purpose of filing a timely CPLR Article 78 Notice of Petition to appeal the administrative law judge's denial of **RP**'s eligibility to receive **OMRDD** services.

### D. MHL Article 81 Guardian is Appointed With Limiting Powers to Transfer RP from JRC

43.     On April 13, 2009, after conducting a hearing, the Court appointed a Guardian for **RP** whose <u>powers would be limited to the extent that the guardian could not consent to transfer **RP** from **JRC** *without court approval*.</u> The decision was incorporated in the June 16, 2009-Order and Judgment appointing a Guardian of the Person and Property for **RP**. [Emphasis added]

44.     At all times, throughout the Guardianship Proceedings and in subsequent court conferences, **SCDSS** and the **COUNTY** were represented by Counsel, and at no time were objections made by the **COUNTY** to **RP** remaining at **JRC** until a community placement was located.

45.     At all times **JRC** made it known to the Court and to all parties involved, that it was expecting to be compensated for the services it was providing to **RP** until a suitable placement was found.

46.     **RP** remained at **JRC** until December 15, 2009, and was finally discharged to a community residence in Suffolk County.

47.     On or about December 15, 2009, **JRC** provided **SCDSS** and the **COUNTY**'s Attorney assigned to this case with a Statement detailing the amount due for the serviced rendered to RP from December 5, 2008 through December 15, 2009.

48.     On April 29, 2010, **JRC** sent a Demand Letter to Commissioner Blass requesting payment for the services that were provided to **RP** from December 5, 2008 through December 15, 2009.

9

49. On May 18, 2010, a conference was held in the Guardianship Part to hear the Special Temporary Guardian's application to discontinue the Article 78 appeal and citing as her reason the fact that **RP** was already in a community residence and according to the Special Temporary Guardian, the only party that would benefit from proceeding with the appeal would be **JRC**. Over **JRC**'s objection, and without opposition from **SCDSS**' Counsel, the Court granted the Special Temporary Guardian's application.

### FIRST CAUSE OF ACTION

### Breach of Implied Contract

Plaintiff incorporates by reference Paragraphs 1 to 49 as if fully alleged herein.

50. New York Law mandates that disabled students who were placed in out of state residential facilities be provided with an appropriate placement upon their return.

51. **RP** was in the care and custody of the Commissioner of **SCDSS** at the time she was placed at **JRC**.

52. Common sense dictates that it would have been negligent to leave a frightened developmentally and emotionally disabled young woman with a history of aggression unattended in a homeless shelter.

53. **SCDSS** did not object to **RP** returning to **JRC**.

54. **SCDSS** took part in the Mental Hygiene Law Article 81 proceedings and all subsequent conferences as an interested party.

55. **SCDSS** did not voice any objections during the MHL Article 81 proceeding, or during any of the subsequent conferences, to **RP** remaining at **JRC** until a New York placement

became available knowing that **JRC** expected to be paid for the services it was providing **RP**, and therefore, an implied contract was formed between **SCDSS**, as the payor, and **JRC**, to continue to provide services to **RP**.

56.   **SCDSS** and the **COUNTY** through its counsel, was aware that **JRC** intended to be compensated for the services it was providing to **RP** during the period of time at issue.

57.   It was reasonable for **JRC** to expect to be paid for the services it was providing **RP** until a New York placement became available.

58.   By its refusal to reimburse **JRC** for services it provided **RP** from December 5, 2008 to December 15, 2009, **SCDSS** breached the implied contract that was formed with **JRC** to pay for these services.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

Plaintiff incorporates by reference Paragraphs 1-58 as if fully alleged herein.

59.   New York law requires that an appropriate placement be made available for returning disabled students, such as **RP,** who were placed in out of state residential schools and who "aged out" of the educational system.

60.   **SCDSS** did not abide by the March 16, 2007-Order to locate a permanent adult placement for **RP** nor did **SCDSS** comply with all the statutory requirements for locating an appropriate placement for **RP** upon her return, instead, **SCDSS** recklessly instructed the **JRC** staff to leave **RP** in a homeless shelter.

61.   **SCDSS**  benefitted from the services **JRC** provided to **RP** because it would have

11

been responsible for her care and maintenance for the duration of time that she remained at **JRC** until December 15, 2009, when a New York placement became available for her.

62. As a result of **SCDSS**' dereliction of duties, it would be unfair to penalize **JRC** for acting responsibly by not leaving **RP** in a homeless shelter, by continuing to provide her with supervision, treatment and housing until she was safely returned to New York and by petitioning the Court for the appointment of a special temporary guardian and a permanent guardian of the person and property to insure that **RP** has an advocate to look after her interests as **SCDSS** should have done.

### THIRD CAUSE OF ACTION

#### Restitution

Plaintiff incorporates by reference Paragraphs 1-62 as if fully alleged herein.

63. By not leaving **RP** in a homeless shelter in Suffolk County, without an appropriate plan to provide for her needs, **JRC** provided a service to the **COUNTY** that was immediately necessary to protect not only **RP**, but the safety of the public who would be coming in contact with her, particularly those unaware of **RP**'s disabilities and impulsiveness which at times manifest as aggression and assaultive behavior.

64. By having performed this service, **JRC** should be entitled to restitution.

### FOURTH CAUSE OF ACTION

#### Quantum Meruit

Plaintiff incorporates by reference Paragraphs 1-64 as if fully alleged herein.

65. By allowing **RP** to remain at **JRC** until New York located a suitable placement for

her, **JRC** rendered a service not only to **RP** but to **SCDSS** and/or to the **COUNTY** as well.

66.   **JRC** provided the services in good faith reliance on New York laws and on an Order and Judgment signed by a Suffolk County Judge directing that **RP** remain at **JRC** until the Court approved a New York placement, with the understanding that **JRC** expected to be compensated for the services it was providing.

67.   By not opposing **RP**'s stay at **JRC** until a placement was identified, **SCDSS** and/or the **COUNTY**, as the responsible agent(s) accepted the services that **JRC** provided to **RP**.

68.   At all times, **JRC** made it known that it expected to be fully compensated and the value of the compensation sought is reasonable because the rates were preset by New York State.

**WHEREFORE,** Plaintiff prays for:

(1)   A finding that an implied contract was formed between **JRC** and **SCDSS** for payment of **RP**'s care and maintenance from December 5, 2008 to December 15, 2009, and that the implied contract was breached by **SCDSS**'s refusal to compensate **JRC** for the services it provided to **RP**;

(2)   A finding that **SCDSS** and/or the **COUNTY** were unjustly enriched by the services **JRC** provided to **RP** from December 5, 2008 to December 15, 2009;

(3)   A finding that Restitution in the amount of $245,787.00, along with costs and interests is awarded to **JRC** for the necessary services it provided the **COUNTY** by protecting **RP** and the public at large;

(4)   An Order and Judgment in the amount of $245,787.00, and costs and

interests against **SCDSS** and/or the **COUNTY** for payment of **RP**'s care and maintenance from December 5, 2008 to December 15, 2009

    (5)   Reasonable attorney fees

    (6)   All other relief the court deems appropriate.


Dated: October 20, 2010
White Plains, New York                                 **Respectfully submitted**,

                                                                    _____
                                                                    **Jocelyne S. Kristal #JK2304**
                                                                    **Attorney for Plaintiff**
                                                                    **19 Court Street**
                                                                    **White Plains, New York 10601**
                                                                    **(914) 287-0230**


JRC v blass/suffolk county/2damended complaint